Robert E. McCAMMON,
Petitioner, Respondent,

v.

Gail McCAMMON,
Respondent, Appellant.

No. WD 35560.

Missouri Court of Appeals,
Western District.

Sept. 4, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Oct. 30, 1984.

Before DIXON, P.J., and SHANGLER
and SOMERVILLE, JJ.

## ORDER

Daniel D. Lane, Kansas City, for respondent, appellant.

H.H. McNabb, Jr., Butler, for petitioner, respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

NUGENT, Judge.

Gail McCammon appeals from the judgment of the lower court modifying a decree of dissolution with respect to the parties' two minor children, respectively aged twelve and nine at the time of the Septem-

ber 19, 1983, hearing. We affirm the judgment.

On January 16, 1981, custody of the two children was awarded to Mrs. McCammon in the decree of dissolution. On August 9, 1983, Mr. McCammon filed a motion for contempt and on that day an order to show cause and summons was issued, both of which were served upon Mrs. McCammon on August 12. The record is silent as to any other proceedings until August 22, when the judge's docket shows the notation, "Continued by agreement of the parties to September 19, 1983, 10:00 a.m." On August 23, petitioner's attorney filed the instant motion to modify the decree as to custody of the two children.

The motion to modify alleged a change of circumstances since the dissolution decree and requested that the children be placed in petitioner McCammon's custody. It was signed by H.H. McNabb, Jr., attorney for Mr. McCammon, and bears attorney McNabb's verification that "he is attorney for petitioner herein and that the facts in the above motion are true and correct to the best of his information and belief" subscribed before a notary public.

The alleged changes in circumstances are, first, that Mrs. McCammon had wilfully failed and refused to permit the childrens' father to visit them in his home, depriving them of the benefits of both parents, and, second, that the Mr. McCammon has remarried and can now provide the children with a suitable home and that the transfer of custody would provide the children with a normal family environment. Nothing in the motion indicates any urgency or undue stress imposed upon the children.

The motion and a notice calling it up for hearing on September 19 were served on Mrs. McCammon on August 25. On September 14, she filed her "counter-petition" for modification of child support and for specification of visitation. The record shows that on September 20, Mrs. McCammon filed a request for continuance, said by her attorney to have been mailed on September 16. The request for continuance states that Mrs. McCammon's attorney had been retained on September 12, that he had not had sufficient time to prepare for a hearing, that he had conflicting engagements in a Kansas City court on September 19, and indicated that additional time was needed to contact witnesses and complete discovery to prepare a proper defense.

Nevertheless, on September 19, the parties appeared in person and by counsel. At that time Mrs. McCammon's attorney advised the court of the request for continuance based upon the need for discovery and time to prepare for trial. The court denied the request because the matter had been pending for some time and involved the welfare of minor children and needed to be resolved as soon as possible. At the hearing, Mrs. McCammon's counsel asserted that Mr. McCammon had not himself verified the petition as the statute requires. The court ruled that it was properly verified. On the same day, the court sustained Mr. McCammon's motion to modify in that the court ordered that Mr. McCammon should have custody of the children during the summer and during the Christmas vacation at specified times and that, upon specified notice to Mrs. McCammon, he would be entitled to visit the children outside Mrs. McCammon's presence on any weekend during which he was in the vicinity of their home.

On this appeal, Mrs. McCammon presents for review seven assignments of error.

### I.

First, we address the question of the trial court's jurisdiction to entertain a motion to modify a decree of dissolution with respect to the custody of children raised in appellant's Point III on appeal. She contends, citing *In re Marriage of Dunn*, 650 S.W.2d 638 (Mo.App.1983); *Hibdon v. Hibdon*, 589 S.W.2d 646 (Mo.App.1979); and *Higginbotham v. Higginbotham*, 146 S.W.2d 856 (Mo.App.1940), that Mr. McCammon's motion for modification was deficient because it was not personally

signed or verified by him. At the hearing, the wife orally moved for dismissal, but the trial court denied the motion.

In 1907, the Missouri Supreme Court decided *Hinkle v. Lovelace,* 204 Mo. 208, 102 S.W. 1015, 11 L.R.A. (N.S.) 730, 120 Am.St. Rep. 698, 11 Ann.Cas. 794. In that case, the court held that, because of the personal character of the suit, the divorce statute in effect in 1867 [1] required that only the person who was the plaintiff could make the affidavit required to be annexed to the petition. The court also held that the affidavit averring good faith and the absence of collusion, fear, or restraint is jurisdictional and that a petition filed without such an affidavit of the plaintiff was fatally defective. 102 S.W. 1018–19. The court reiterated its holding in *Robertson v. Robertson,* 270 Mo. 137, 192 S.W. 988 (1917). The courts of appeal have followed suit. *Higginbotham v. Higginbotham,* 146 S.W.2d 856, 857 (Mo.App.1940); *State ex rel. Knapp v. Cowan,* 230 Mo.App. 226, 88 S.W.2d 424, 425 (1935); *State ex rel. Sappington v. American Surety Co.,* 41 S.W.2d 966, 968 (Mo.App.1931); and *Stevens v. Stevens,* 170 Mo.App. 322, 156 S.W. 68, 69 (1913).

The Supreme Court's rationale in the *Hinkle* and the *Robertson* cases was that the plaintiff in a divorce action should, in person, swear to the petition and to the things to be stated in such an affidavit, matters which would rest peculiarly and exclusively within the plaintiff's knowledge and which, in the very nature of things, no one else could know to be true or false. For example, the court reasoned, no one but the plaintiff could know whether the complaint was made out of levity, by collusion, by reason of fear or restraint, whether the suit was brought for the mere pur-

pose of being separated from each other, or whether the plaintiff was sincere in prosecuting the suit. For that reason, the court concluded that authority for an agent of the plaintiff to make an affidavit for the plaintiff could not be inferred from anything in the statute. (In the *Hinkle* case, the petition had been verified by the affidavit of the plaintiff's next friend.)

The Dissolution of Marriage Act of 1973 abandoned the requirement for the old form of affidavit. The new act requires only that "[t]he petition in a proceeding for dissolution of marriage or legal separation shall be verified and shall allege the marriage is irretrievably broken ...." § 452.-310.[2] As did the old divorce law, the 1973 Act omits any specific requirement that the petition be verified only by the person who is the plaintiff, but the new act also omits a requirement for any particular form of verification. In an action for dissolution, the petition need only set forth the residence of the parties, the length of residence in this state, the date and place of the marriage, the date of the separation, identities of the children, if any, whether the wife is pregnant, which party has actual custody of any minor children, any arrangements as to custody, support or maintenance, and the relief sought, that is, dissolution or legal separation.

Since the adoption of the Dissolution of Marriage Act of 1973, only one case has held that under that act verification of the plaintiff's petition by the plaintiff is jurisdictional: *In re Marriage of Dunn,* 650 S.W.2d 638, 639 (Mo.App.1983). The court there relied on *Hibdon v. Hibdon,* 589 S.W.2d 646, 647 (Mo.App.1979), and referred also to *McCarty v. McCarty,* 300 S.W.2d 394, 400 (Mo.1957). Although the *Hibdon* case was decided after the adop-

---

**1.** In *Hinkle* the court identified the statute as "Section 2, c. 114, p. 460. Gen.St. 1865", and stated that it required that "the petition shall be accompanied by an affidavit annexed thereto, that the facts stated therein are true according to the best knowledge and belief of the plaintiff, and that the complaint is not made out of levity, or by collusion, fear, or restraint between the plaintiff and defendant, for the mere purpose of being separated from each other, but in sinceri-

ty and truth, for the causes mentioned in the petition." Exactly the same language appeared in § 452.040, R.S.Mo., 1969, the divorce statute in effect at the time of the adoption of the Dissolution of Marriage Act in 1973.

**2.** Unless otherwise indicated, all sectional references are to Revised Statutes of Missouri, 1978.

tion of the Dissolution of Marriage Act, the court there did not address the question of the necessity for plaintiff's affidavit in support of a dissolution petition, and the *McCarty* case and *State ex rel. Knapp v. Cowan*, 88 S.W.2d at 425, upon which it relied, were cases dealing with the necessity for an affidavit under the old divorce statute.

If, as Mrs. McCammon asserts on this appeal, her former husband's motion for modification was deficient because it was signed and verified only by his attorney, the only authority supporting that proposition is the tenuous line extending from *In re Marriage of Dunn* back through the repeal of the old divorce laws to *Hinkle v. Lovelace*. In all of those cases, the issue was the validity of a petition for dissolution or divorce unsupported by the affidavit of the plaintiff and, therefore, the issue of the jurisdiction of the court.

In this case we are not dealing with a petition for dissolution or for divorce but with an entirely new and different statute, § 452.455,[3] which requires verified petitions in child custody modification proceedings. The language in both § 452.310 and § 452.455 to the effect that the petition shall be verified is the same, but neither statute specifically requires that the plaintiff shall furnish the verification or that the verification shall be as to anything which only the plaintiff could know. Thus, both new sections, omit the requirement with respect to averments about collusion, fear,

restraint, good faith, and the lack of levity which the old divorce statute imposed. Those were the specific requirements which led the court in *Hinkle v. Lovelace* and *Robertson v. Robertson* to believe that the legislature intended that only the plaintiff could execute the required affidavit and that the proper execution of the affidavit was jurisdictional.

Whatever the law may be at this time with respect to the necessity for a petition for dissolution verified by the plaintiff and the plaintiff only, in order to confer jurisdiction upon the court, we see no reason to read such a requirement into § 452.455.

Under the present law, an action to modify a prior custody decree is governed by §§ 452.410, 452.450, 452.455 and 452.480. Section 452.410 provides in part that a "court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 ...." The latter section explicitly confers jurisdiction on the court "to make a child custody determination by initial or modification decree ..." in certain circumstances. Amended § 452.455, as we have shown, requires that a petition for modification be verified. Section 452.480[4] further provides that "[i]n his first pleading, or in an affidavit attached to that pleading, every party in a custody proceeding shall give information under oath" concerning the child. But only § 452.450 specifies what is required to confer jurisdiction on the court in such cases, and those specifications do not include veri-

---

**3.** As amended by Laws, 1979, p. 621, § 1, eff. March 6, 1979. The first part of § 452.455 now reads as follows:

Petition for modification—procedure.—1. Any petition for modification of child custody decrees filed under the provisions of section 452.410, or sections 452.440 to 452.450, shall be verified and, if the original proceeding originated in the state of Missouri, shall be filed in that original case, but service shall be obtained and responsive pleadings may be filed as in any original proceeding.

**4.** Section 452.480 reads in relevant parts as follows:

Information under oath to be submitted to the court—1. In his first pleading, or in an affidavit attached to that pleading, every party in a custody proceeding shall give informa-

tion under oath as to the child's present address, with whom the child is presently living and with whom and where the child lived, other than on a temporary basis, within the past six months. In this pleading or affidavit every party shall further declare under oath whether:

(1) He has participated in any capacity in any other litigation concerning the custody of the same child in this or any other state;

(2) He has information of any custody proceeding concerning the child pending in a court of this or any other state; and

(3) He knows of any person not a party to the proceedings who has physical custody of the child or claims to have custody or visitation rights with respect to the child.

fication by the petitioner of the petition to modify.

We agree with the Eastern District of this court which in a similar case held that the requirements of § 452.480 are not jurisdictional. *In re Marriage of Gohn*, 639 S.W.2d 413, 414 (Mo.App.1982). The court held there that "[s]ection 452.450 sets forth certain jurisdictional requirements. It contains no reference to Section 452.480. Expressio unius est exclusio alterius. Jurisdiction attaches when the requirements of § 452.450 are met, not § 452.480."

Moreover, we believe that to hold that verification of a modification petition by only the petitioner is jurisdictional so that judgments may be declared void after trial on the merits would be to exalt form over substance and is totally unnecessary in this context. Accordingly, we hold that in this case verification by the petitioner's attorney of the motion to modify was at least sufficient to confer jurisdiction upon the court to proceed with the case.

## II.

Mrs. McCammon was served with a copy of the motion and notice of the hearing date on August 25, twenty-five days before the time specified for the hearing, September 19, 1983. She complains that the trial court erred in refusing to grant a continuance arguing that she was entitled to thirty days within which to file an answer and to forty-five days to complete discovery. She further contends that the court denied her due process and the right to effective assistance of counsel by its premature hearing on the motion.

The second paragraph of § 452.455 in its pertinent part now reads as follows:

2. Before making a decree under the provisions of section 452.410, or sections 452.440 to 452.450, the litigants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child must be served in the manner provided by the rules of civil procedure and applicable court rules and may within thirty days after the date of service ... file a verified answer....

In this case, Mrs. McCammon was the person in custody of the children and was a parent whose rights had not been terminated. Accordingly, under § 452.455, she was entitled to thirty days within which to answer the motion. In fact, she did answer— she filed her "counter-petition," which we must take to have been responsive to Mr. McCammon's motion. Not only is it denominated a "counter-petition," it sought a modification of child support and a specification of visitations. The child support issues raised in the "counter-petition" were left to be tried at a later hearing. Only the issues pertaining to change of custody were tried on September 19, 1983.

Despite his asserted inability to prepare for the hearing, Mrs. McCammon's attorney mustered the testimony of two witnesses to support her defense and successfully resisted the primary thrust of the motion—to transfer custody of the children. Custody of the children remained in their mother. The net result of the hearing was a relatively slight change in the specifications of Mr. McCammon's visitation privileges.

Thus, even if the court erred in denying her request for a continuance, Mrs. McCammon has not shown how she was prejudiced by the denial. For all important purposes, Mrs. McCammon's cause prevailed at the hearing, albeit the court's modification of the decree may not have been to her taste.

## III.

In her Point III on appeal, Mrs. McCammon asserts that the associate circuit judge who presided in this case was improperly assigned. Her argument is refuted by the docket sheet in the legal file. It contains the entry: "8 26 83 Case assigned to Judge James N. Bradley, Jr., /s/ Wm. J. Roberts." Judge Roberts was the presiding judge of the circuit.

## IV.

In Point IV of her brief appellant argues that the judge applied an incorrect standard for considering the evidence. She points to the comment of the trial judge that "there has been evidence that shows there's been a sufficient change in the circumstances of both parties since the time of the divorce that justifies the change of custody." Mrs. McCammon maintains that under § 452.410 the court may only consider changed circumstances of the child and the custodial parent.

■ A court may change custody of a child on the basis of an improvement in the circumstances of the non-custodial parent in the proper case. *Eissler v. Eissler,* 468 S.W.2d 217, 220–22 (Mo.App.1971). The trial court is not limited to examining only the circumstances of the child and the custodial parent. In all cases, the overriding duty of the court is to serve the best interests of the child. Where the evidence supports the conclusion that the custodial parent has interfered with the decretal rights of visitation by the non-custodial parent, the court may consider that interference in determining the welfare of the child. *K R (S) D v. C D S,* 646 S.W.2d 428, 431 (Mo.App.1983). Such interference with or denial of rights granted by the decree may amount to a change of condition of the child sufficient to justify a modification. *R.L.S. v. J.E.S.,* 522 S.W.2d 5, 6 (Mo.App.1975). In this case, the evidence was sufficient to support a finding of interference by Mrs. McCammon with her former husband's rights to visitation under the dissolution decree. In such circumstances, the court committed no error in modifying the decree with respect to Mr. McCammon's visitation privileges.

## V.

In the last three Points of her brief, appellant argues that two types of evidence were improperly admitted at the hearing. She contends that Linda McCammon, the husband's sister, should not have been allowed to testify about appellant's actions prior to the decree. Linda testified that she saw the children in an unkempt, un-

washed condition at the laundromat with their mother sometime "definitely after" the dissolution. Linda also testified that appellant had stated "she wished Gene [respondent] would fall off something so she could collect the insurance money." Linda "believe[d it was] after the divorce but [she] couldn't say for sure."

Appellant also argues that she should not have been cross-examined about negotiations which preceeded the dissolution decree. She never actually testified to any negotiations. Instead, she testified that she could not remember certain issues, mentioned by respondent's attorney as subjects of negotiation.

■ On a motion to modify a decree as to child custody, the court should consider only facts which have occurred since the prior decree or that were unknown to the court at the time of that decree. *McFadden v. McFadden,* 509 S.W.2d 795, 798 (Mo.App.1974). Likewise, evidence of negotiations before the decree are ordinarily inadmissible. *Tripp v. Harryman,* 613 S.W.2d 943, 949, (Mo.App.1981).

■ Linda McCammon testified about one incident which she placed as after the dissolution decree. The other incident she described was arguably after the decree. Appellant never affirmatively testified to any negotiations prejudicial to her case. When asked potentially prejudicial questions, her response was that she could not remember any such negotiations. Thus, no factual basis underlies appellant's allegations of error.

■ Further, to the extent that any arguably erroneous questions were allowed or evidence received, in a bench tried case the judge is permitted wide latitude in the reception of evidence. He is presumed to have considered only proper evidence in reaching his judgment and an appellant must show an absence of substantial competent evidence supporting the judgment to reverse it. *Nunn v. Nunn,* 644 S.W.2d 370, 373 (Mo.App.1982).

Accordingly, we affirm the judgment of the trial court.

All concur.